## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, et al., | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, et al., | ) | |
| | ) | |
| Appellants, | ) | Civ. Action No. 25-cv-0307- |
| | ) | JLH |
| v. | ) | |
| | ) | |
| YELLOW CORPORATION, et al.,[1] | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

## REPLY BRIEF FOR APPELLEE/CROSS-APPELLANT
## YELLOW CORPORATION AND AFFILIATES

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

Laura Davis Jones (No. 2436)
Timothy P. Cairns (No. 4228)
Peter J. Keane (No. 5503)
Edward Corma (No. 6718)
PACHULSKI STANG
ZIEHL & JONES LLP
919 North Market Street, 17th floor
P.O. Box 8705
Wilmington, DE  19899-8705
(Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400l
Email:        jones@pszjlaw.com
               tcairns@pszjlaw.com
               pkeane@pszjlaw.com
               ecorma@pszjlaw.com

George W. Hicks, Jr. (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:   (202) 389-5000
Facsimile:   (202) 389-2500
Email:        george.hicks@kirkland.com

Patrick J. Nash, P.C. (*admitted pro hac vice*)
Allyson B. Smith (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:        patrick.nash@kirkland.com
               allyson.smith@kirkland.com

Michael P. Esser (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
555 California, Suite 27
San Francisco, CA  94104
Telephone:   (202) 389-5000
Facsimile:   (415) 439-1500
Email:        michael.esser@kirkland.com

Dated: August 11, 2025

*Counsel for Appellees/Cross-Appellants Yellow Corporation and Affiliates*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Yellow Corporation and its affiliated debtors and debtors in possession (collectively, "Yellow") make the following disclosure:

1)    <u>For non-governmental corporate parties please list all parent corporations:</u>

USF Holland LLC and New Penn Motor Express LLC are wholly owned subsidiaries of Yellow Corporation. YRC Inc. (d/b/a YRC Freight) is wholly owned subsidiary of Roadway LLC, which is a wholly owned subsidiary of Yellow Corporation. USF Reddaway Inc. is a wholly owned subsidiary of YRC Regional Transportation, Inc., which is a wholly owned subsidiary of Yellow Corporation. There are no other parent corporations.

2)    <u>For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:</u>

No publicly held company owns more than 10% of Yellow's stock. For completeness of disclosure, MFN Partners (through MFN Partners, LP, MFN Partners GP, LLC, MFN Partners Management, LP, MFN Partners Management LLC, Farhad Nanji, and Michael F. DeMichele) and the U.S. Department of Treasury each own 10% or more of Yellow's stock, but those entities are not publicly held companies.

3)    <u>If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:</u>

    None.

4)    <u>In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.</u>

    (4.1) The debtors and debtors in possession are: Yellow Corporation; 1105481 Ontario Inc.; Express Lane Services, Inc.; New Penn Motor Express LLC; Roadway Express International, Inc.; Roadway LLC; Roadway Next Day Corporation; USF Bestway Inc.; USF Dugan Inc.; USF Holland International Sales Corporation; USF Holland LLC; USF RedStar LLC; USF Reddaway Inc.; Yellow Freight Corporation; Yellow Logistics, Inc.; YRC Association Solutions, Inc.; YRC Enterprise Services, Inc.; YRC Freight Canada Company; YRC Inc.; YRC International Investments, Inc.; YRC Logistics Inc; YRC Logistics Services, Inc.; YRC Mortgages, LLC; and YRC Regional Transportation, Inc.

(4.2) The members of the creditors committee are: BNSF Railway; Michelin North America, Inc., Daimler Trucks, N.A.; RFT Logistics LLC; Pension Benefit Guaranty Corporation; International Brotherhood of Teamsters; Central States, Southeast and Southwest Areas Pension Fund; New York State Teamsters Pension and Health Funds; and Mr. Armando Rivera.

(4.3) None.

Dated:  August 11, 2025          */s/ Laura Davis Jones*
                                 Laura Davis Jones

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................v

INTRODUCTION .................................................................................1

I.    The Bankruptcy Court Erred When It Determined That, Even If Yellow Satisfies the Good-Faith Provision, It Is Still Liable For 14 Days Of Back Pay And Benefits Per Affected Employee, Rather Than Zero Liability...........................................................................................3

II.   The Bankruptcy Court Erred In Holding That Yellow Is An "Employer" Under The New Jersey WARN Act .............................................13

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*All the Way Towing, LLC v. Bucks Cnty. Int'l Inc.*,
 200 A.3d 398 (N.J. 2019) ....................................................................17

*Bagdan v. Beck*,
 140 F.R.D. 660 (D.N.J. 1991)..............................................................17

*Becker v. ARCO Chem. Co.*,
 207 F.3d 176 (3d Cir. 2000) ..........................................................11, 12

*Bestest Int'l Inc. v. Futrex Inc.*,
 2000 WL 36739130 (C.D. Cal. Aug. 14, 2000) .................................17

*In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*,
 104 F.3d 1147 (9th Cir. 1997) ...............................................14, 15, 16

*Bittner v. United States*,
 598 U.S. 85 (2023)................................................................................6

*Bledsoe v. Emery Worldwide Airlines*,
 635 F.3d 836 (6th Cir. 2011) .............................................................6, 8

*Breedlove v. Earthgrains Baking Companies, Inc.*,
 140 F.3d 797 (8th Cir. 1998) ................................................................8

*Chamber of Com. v. Whiting*,
 563 U.S. 582 (2011)..............................................................................7

*In re Columbia Gas Sys. Inc.*,
 146 B.R. 106 (D. Del. 1992)...............................................................15

*Council of Alt. Pol. Parties v. Hooks*,
 179 F.3d 64 (3d Cir. 1999) .................................................................15

*Coventry v. U.S. Steel Corp.*,
 856 F.2d 514 (3d Cir. 1988) ...............................................................12

*Dalle Tezze v. Dir., Off. of Workers' Comp. Programs*,
 814 F.2d 129 (3d Cir. 1987) .................................................................2

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,
    729 F.3d 248 (3d Cir. 2013) ...................................................................7

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005) ...............................................................................7

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................12

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .................................................................10

*Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*,
    263 F.3d 296 (3d Cir. 2001) ...............................................................10

*Jennings v. Stephens*,
    574 U.S. 271 (2015) ...............................................................................2

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) .............................................................................13

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas
    Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...........................................................12

*In re Magic Restaurants, Inc.*,
    1997 WL 33100710 (D. Del. Oct. 8, 1997).........................................14

*Nagle v. Alspach*,
    8 F.3d 141 (3d Cir. 1993) ...................................................................13

*In re Pine Mountain, Ltd.*,
    80 B.R. 171 (B.A.P. 9th Cir. 1987) ....................................................15

*Roberts v. Genting New York LLC*,
    68 F.4th 81 (2d Cir. 2023) ...................................................................6

*Squires v. Bonser*,
    54 F.3d 168 (3d Cir. 1995) ...................................................................6

*U.S. v. Hardee*,
    639 F.App'x 854 (3d Cir. 2016) .........................................................13

*Wood v. Milyard,*
    566 U.S. 463 (2012) ....................................................................13

**Statutes**

29 U.S.C. §2104(a)(1)(A)-(B) ..........................................................4

29 U.S.C. §2104(a)(4) ......................................................................9

N.J. Stat. Ann. §34:21-1 ...........................................................16, 18

**Rules**

Fed. R. Bankr. P. 8006(a)(1)-(3) ...................................................14

Fed. R. Bankr. P. 8009 ..............................................................13, 14

Fed. R. Bankr. P. 8012 ......................................................................i

Fed. R. Bankr. P. 8015(a)(5) ..........................................................21

Fed. R. Bankr. P. 8015(a)(6) ..........................................................21

Fed. R. Bankr. P. 8016(d)(2)(A) .....................................................21

Fed. R. Bankr. P. 8016(d)(2)(B)(i) .................................................21

**Other Authorities**

Rep. No. 62, 100th Cong. 1st Sess. 24 (1987) ................................7

## INTRODUCTION

The bankruptcy court properly held that Yellow owes no liability under the federal WARN Act because it was not an "employer" when it ordered the layoffs of union workers on July 30, 2023.  It also correctly held that Yellow substantively satisfied the WARN Act's faltering company and unforeseen business circumstances defenses, although it should have then held that Yellow provided sufficient notice to rely on those defenses.  If this Court agrees with either of those two bases for no liability by Yellow, it need not address Yellow's first cross-appeal argument: that, if Yellow faces some potential liability, the bankruptcy court erred in imposing 14 days' worth of liability rather than zero, after correctly holding that Yellow satisfied the WARN Act's good-faith provision.  Should the Court confront that argument, however, it should reverse, for the Unions offer no basis for affirming the imposition of 14 days of liability—almost 25% of Yellow's total liability.  The Unions principally argue that the WARN Act permits liability premised on penalizing employers and deterring misconduct, but neither the statutory text nor the case law supports that proposition, and regardless, the bankruptcy court gave no explanation justifying 14 days of liability, much less to penalize Yellow or deter other employers.

As for Yellow's second cross-appeal argument, the Unions also provide no reason to uphold the imposition of liability under the New Jersey WARN Act.  The Unions first argue that Yellow has forfeited this issue by not explicitly identifying it

in its statement of issues, but that proposition finds no support in Third Circuit law and has been rejected by leading treatises and other courts of appeals. On the merits, the Unions ignore Third Circuit precedent and Department of Labor commentary and instead cite inapposite decisions and immaterial distinctions between the federal and New Jersey statutes. Just as the Court should reverse any alternative imposition of liability under the federal WARN Act (if it reaches that issue), it should reverse any imposition of liability under the New Jersey WARN Act.[2]

---

[2] The Unions argue that Yellow cannot challenge the bankruptcy court's failure to apply the WARN Act's affirmative defenses because Yellow did not raise that issue as part of its cross-appeal. Br.22-24. The Unions are wrong. A cross-appeal is necessary only when the appellee "attack[s] the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015). Thus, Yellow cross-appealed the two issues under which it seeks to "enlarg[e]" its rights: (1) seeking a reduction in liability from 14 days to zero (should Yellow be subject to any liability at all, as the bankruptcy court held in the alternative); and (2) seeking elimination of liability under the New Jersey WARN Act. Yellow's argument that it should be permitted to avail itself of the WARN Act's defenses does not seek to "enlarg[e]" its rights or "lessen[]" the Unions', because prevailing on that argument would result in a decree no different than the current decree of no liability. The argument is thus "in support of [the] decree," even though it "involve[s] an attack upon the reasoning of the lower court," and therefore does not require a cross-appeal. *Jennings*, 574 U.S. at 276. Accepting Yellow's argument on the affirmative defenses "would merely provide another avenue by which [the bankruptcy court] could reach the same favorable judgment," and thus "neither enlarge[s] [Yellow's] rights nor diminish[es] the [Unions'] rights." *Dalle Tezze v. Dir., Off. of Workers' Comp. Programs*, 814 F.2d 129, 133 (3d Cir. 1987). Accordingly, a cross-appeal on that issue was unnecessary (and would have been improper).

I.  **The Bankruptcy Court Erred When It Determined That, Even If Yellow Satisfies the Good-Faith Provision, It Is Still Liable For 14 Days Of Back Pay And Benefits Per Affected Employee, Rather Than Zero Liability**

**A.**  The bankruptcy court found that Yellow prepared its WARN notice amid "unforeseen and uniquely challenging circumstances," that its failure to mention the strike notice in the WARN notice "was motivated … by a desire to avoid exacerbating a potentially volatile (and perhaps even dangerous) situation," and that its employees were already "aware of the company's efforts to stabilize its precarious financial position."  A0629.  The court also acknowledged that merely a "few additional words" would have rendered Yellow's WARN notice legally sufficient, and even then, any additional language would "probably not" have "made a difference to the employees" given Yellow's "extensive communications with them."  A0628; A0492.  Accordingly, Yellow's violation of the WARN Act was a "technical one," and its argument for zero liability had "common sense."  A0517; A0627-628.  The court nevertheless believed that there was no "legal basis" to reduce Yellow's liability to zero under the good-faith provision.  A0628.  In its view, a company that has "violated the WARN Act … should bear some liability," since "Congress' objective" in the WARN ACT was not simply "to provide a 'make whole' remedy for the harm caused by the failure to provide an adequate notice."  A0628.  This determination is legal error and provides no support for the court's imposition of 14 days of liability.

The Unions offer no credible defense of the bankruptcy court's reasoning. Instead, they double down on it, arguing that the WARN Act's remedial provision is intended not only to "mak[e] employees whole for harm they sustained" but also "to penalize the wrongdoing employer" and "deter future violations"—two purposes even the bankruptcy court did not mention. Br.44; *see also id.* at 45 (invoking the "WARN Act's goals of penalizing the wrongdoing employer and deterring future violations"); *id.* at 46 (referring to "the goals of penalizing the wrongdoing employer and deterring future violations"); *id.* at 48-49 (noting the "legislative goals of penalizing [employers] … and to deter future violations"). That argument finds no support in the statutory text or the case law.

As for the statutory text, the remedial provision applicable here is clearly intended—at most—to compensate an employee for harm sustained from an employer's purported failure to provide sufficient notice, and it does not contemplate liability premised on "penalizing" an employer or "deterring future violations." First, the statute allows "each aggrieved employee" to recover "back pay for each day of violation" and "benefits … if the employment loss had not occurred." 29 U.S.C. §2104(a)(1)(A)-(B). This relief is tied *to the specific employee*, not to the employer's level of culpability. *See id.* §2104(a)(1)(A)(i)-(ii) (calculating back pay based on higher of average rate by "such employee" in prior three years of "the employee's employment" or final rate by "such employee"). Second, liability is

4

capped at "a maximum of 60 days," *id.* §2104(a), which is consistent with the "60-day period" before the plant closing or mass layoff during which the employee must typically receive the WARN notice, *id.* §2102(a)—and entirely inconsistent with the notion that penalizing or deterring employers (which would presumably allow liability beyond 60 days) plays any role. Third, an employer's liability "shall be reduced" by certain payments already made "to the employee." *Id.* §2104(a)(2). By decreasing liability to an employee based on what that employee has already received, the text underscores the make-whole purpose of the remedial provision.

Most significant, the WARN Act *does* contemplate liability premised on considerations beyond making an employee whole—but only under other provisions, and in situations not applicable here. Specifically, the Act provides that an employer who violates the Act "with respect to a unit of local government shall be subject to a civil penalty of not more than $500 for each day of such violation," except "if the employer pays to each aggrieved employee the amount for which the employer is liable to that employee within 3 weeks from the date the employer orders the shutdown or layoff." *Id.* §2104(a)(3). This is the only penalty provision in the WARN Act, and it expressly applies only "with respect to a unit of local government." The fact that the WARN Act explicitly allows for "penalizing" employers in one circumstance (that is not present here) is strong textual evidence that, in the ordinary course, the Act's other remedial provisions—including those

applicable here—are not intended to penalize or deter employers but exist solely to make employees whole. *See, e.g.*, *Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning.").

Case law does not hold otherwise. Notably, the Unions do not rely on the only two decisions the bankruptcy court invoked, *Roberts v. Genting New York LLC*, 68 F.4th 81 (2d Cir. 2023), and *Bledsoe v. Emery Worldwide Airlines*, 635 F.3d 836 (6th Cir. 2011). Indeed, the Unions *distance* themselves from the court's use of those decisions, asserting that the bankruptcy court "drew the correct conclusion about the WARN Act's purpose, regardless of whether its conclusion can find support in *Roberts* and *Bledsoe*." Br.48. The Unions' tacit admission that those cases are inapposite—and that the bankruptcy erred in relying on them—is well-founded. As Yellow explained and the Unions do not dispute, those cases only addressed whether the WARN Act's remedies are equitable rather than legal, not whether §2104(a)(1) allows for a punitive or deterrent component. Yellow.Br.58. The Unions nevertheless argue that "[w]hen a federal statute's goals include both making the victim whole and deterring future violations, the court can consider the goal of deterrence when formulating equitable remedies." Br.45 (citing *Squires v. Bonser*, 54 F.3d 168, 171 (3d Cir. 1995)). But that contention relies on the proposition that

6

the WARN Act's remedies are intended to "deter[] future violations," which is the very premise at issue and one unsupported by the statutory text.

The Unions are left to argue that the basis for using the WARN Act's remedial provisions to "penalize" employers and "deter" future violations is found in the Act's "legislative history," specifically a Senate Report accompanying the Act. *See* Br.44-45 (citing Rep. No. 62, 100th Cong. 1st Sess. 24 (1987)). This assertion is unavailing for several reasons. First, "Congress' 'authoritative statement is the statutory text, not the legislative history.'" *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 259 (3d Cir. 2013) (quoting *Chamber of Com. v. Whiting*, 563 U.S. 582, 599 (2011)); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (discounting "committee reports" as giving "unrepresentative committee members … both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text"). Legislative history "may be referenced only if the statutory language is written without a plain meaning, i.e., if the statutory language is ambiguous." *S.H.*, 729 F.3d at 259. The Unions do not even contend that the statutory language here is ambiguous, and as noted, numerous features of the WARN Act's text unequivocally demonstrate that the remedial provisions applicable here are intended to make employees whole, not penalize or deter employers.

7

Second, both the Senate Report and the Eight Circuit decision cited by the Unions that invokes that report, *Breedlove v. Earthgrains Baking Companies, Inc.*, 140 F.3d 797 (8th Cir. 1998), were addressing a different issue: whether an employer's liability to affected employees due to a WARN Act violation "should be calculated based on working days or calendar days." *Id.* at 799. Even still, the Eighth Circuit's interpretation of the Senate Report *supports* Yellow's position that the remedial provisions here are only intended to make employees whole, not penalize or deter employers. The Eighth Circuit focused on the first sentence of the relevant portion of the Senate Report, which stated that "damages are to be measured by the wages the employee would have received." *Id.* at 801. And it explained that, to the extent employers were "penalized" (as set forth in the second sentence of the report), the "penalty" was having to "pay affected workers wages although no work was done." *Id.* The Eighth Circuit also noted that it "has characterized the WARN Act as most closely analogous to an action to recover damages for a breach of implied contract … to notify employees for terminating them." *Id.*; *see also Bledsoe*, 635 F.3d at 843 (explaining that WARN Act remedies "are tailored to restoring the pay and benefits that the employer should have provided to its aggrieved employees during or in lieu of a 60-day notice period"). These observations bolster the conclusion that the WARN Act's remedial provisions are intended, at most, to make

employees whole, and that they do not provide a basis for imposing liability simply to penalize an employer or deter future wrongdoing.

In short, nothing in the statute or the case law supports the Unions' position that the WARN Act's remedial provisions allow for "penalizing the wrongdoing employer and deterring future violations," such that the bankruptcy court correctly held that, as a matter of law, it could not "eliminate [Yellow's] WARN Act liability on good faith grounds" because, having violated the WARN Act, Yellow must bear "some liability." The Unions are thus incorrect to contend that the bankruptcy court, despite "accepting each of Yellow's claimed mitigating circumstances," could nevertheless exercise its discretion to impose 14 days of liability on Yellow "[t]o effectuate the goals of penalizing the wrongdoing employer and deterring future violations." Br.46. The bankruptcy court's belief that it *had* to impose liability on Yellow despite circumstances demonstrating otherwise—because, in its view, Congress intended to do more than "provide a 'make whole' remedy" for affected employees—was legal error and thus an abuse of discretion.

That conclusion is reinforced by the numerous decisions that, under 29 U.S.C. §2104(a)(4), have declined to impose liability on an employer despite a WARN Act violation. *See* Yellow.Br.58-59 (citing cases). The Unions contend that these cases are inapposite because the bankruptcy court's choice of 14 days "fall[s] within" its discretion in "decid[ing] upon the appropriate remedy," and, moreover, none of

9

Yellow's cited cases is "factually analogous." Br.46-47. The Unions also assert that Yellow's argument is that "because some courts exercised their discretion to award zero damages to WARN plaintiffs, the Bankruptcy Court was *compelled* to award zero damages in this case." *Id.* at 46. These contentions misstate Yellow's argument and miss the operative point, which is that the existence of cases declining to impose WARN Act liability on an employer that violates the WARN Act refutes the proposition—adopted by the bankruptcy court—that a violating employer categorically must bear "some liability." That *legal* error necessarily constitutes an abuse of discretion, as the Unions' own authority acknowledges. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995).

The Unions contend in passing that even a legal error "does not warrant reversal when it is highly probable that the error did not affect the judgment." Br.44 (citing *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 328-29 (3d Cir. 2001)). The record does not support that conclusion here, however. The bankruptcy court recited a list of findings supporting zero liability for Yellow. It nevertheless imposed liability because "giv[ing] effect to the purpose of the statute"—which it viewed as more than just making employees whole—required Yellow to bear "some liability." It is thus not "highly probable" that this legal error by the court "did not affect" its determination. If anything, it is "highly probable" that the court's

mistaken legal view drove its decision to impose liability despite Yellow's "technical" violation and the fact that even a "few additional words" would "probably not" have "made a difference."

**B.**    Even if a court must impose "some" liability following a WARN Act violation, the Unions do not even purport to defend the bankruptcy court's unexplained imposition of 14 days here—nearly 25% of Yellow's total potential liability. *See* Yellow.Br.60-61. Like the bankruptcy court, the Unions make no effort to tie that determination to the evidence or the bankruptcy court's own findings. And the Unions certainly make no effort—nor did the bankruptcy court—to explain why nearly 25% of Yellow's potential liability, and not some lesser amount, is necessary to advance any particular penal or deterrent interest, as the Unions now claim as a basis for imposing liability. The stark disconnect between Yellow's negligible culpability—as evidenced by the bankruptcy court's own findings—and nearly 25% total liability is itself an abuse of discretion. But because the bankruptcy court "failed to explain" why it chose 14 days, and "its reasons for doing so are not otherwise apparent from the record," this Court "need not defer" to any exercise of discretion and instead performs *de novo* review. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 181 (3d Cir. 2000).

The Unions do not dispute that the bankruptcy court offered no explanation for choosing 14 days—much less a basis for why 14 days was reasonably related to

any penal or deterrent interest, particularly in light of the court's own findings regarding the miniscule nature of Yellow's purported WARN violation. Nor do the Unions claim that the court's "reasons for doing so" are "apparent from the record." Instead, the Unions simply argue that *Becker* and the *de novo* review rule do not apply because that case involved an evidentiary ruling. Br.48. But *Becker* did not cabin its holding to just evidentiary rulings, and there is no principled basis for that distinction—as evidenced by decisions not just applying *de novo* review but even finding an abuse of discretion in other contexts when no explanation is given. *See, e.g.*, *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001) (applying *de novo* review to insufficiently explained class-certification decision); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518-19 (3d Cir. 1988) (finding abuse of discretion where leave to amend was denied "without any justifying reason") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, as in *Becker*, the reviewing court needs to know how and why a court exercised its discretion in order to determine whether that discretion was abused. Absent such explanation, the court should employ plenary review based on the record. In any event, regardless of the standard of review this Court applies, the unexplained imposition of nearly 25% liability cannot stand.

## II.    The Bankruptcy Court Erred In Holding That Yellow Is An "Employer" Under The New Jersey WARN Act

**A.**   Contrary to the Unions' assertion, Yellow has not forfeited an appeal of the bankruptcy court's incorrect determination that Yellow was an employer under the New Jersey WARN Act.[3]  The Unions cite no cases, and Yellow is not aware of any, in which the Third Circuit has held that an issue raised in the bankruptcy court, briefed by the parties in the parties in the bankruptcy court, and addressed by the bankruptcy court in a ruling is forfeited just because it was not included in the record designations and statement of issues required under Federal Rule of Bankruptcy Procedure 8009.

To the contrary, the Third Circuit has held that an issue is forfeited on appeal only where it is "either not set forth in the statement of issues presented *or* not pursued in the argument section of the brief." *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (emphasis added); *see also U.S. v. Hardee*, 639 F.App'x 854, 859 (3d Cir. 2016) (no forfeiture where issues were not raised in the statement of issues but "broader arguments are asserted in the argument section of the [party's] brief"). And while that rule concerns presentation of issues and arguments in an appellate brief,

---

[3]  The Unions repeatedly assert that Yellow "waived" its appeal.  But Yellow has not "knowingly and intelligently relinquished" a right, and the Unions do not so contend. *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012).  The Unions appear to be arguing that Yellow forfeited its right to appeal.  *See Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) ("[F]orfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right[.]").

there is no reason why it would not apply where the only purported deficiency is the failure to identify an issue in a Rule 8009 statement of issues—which is not even filed in an appellate court but in the bankruptcy court.

The Unions do not, and cannot, claim any "bad faith by [Yellow] or prejudice to [the Unions]" resulting from any purported procedural defect. *In re Magic Restaurants, Inc.*, 1997 WL 33100710, at *2 (D. Del. Oct. 8, 1997). Yellow expressly reserved the right to "amend or supplement" the issues it identified, A0922, and expressly cross-appealed the bankruptcy court's Feb. 26, 2025 Opinion, Mar. 12, 2025 Final Order, and "any and all orders or rulings antecedent and ancillary thereto," Bankr. Dkt. 5975 at 1. And the issue of whether Yellow was an employer under the New Jersey WARN Act was raised and argued below, addressed by the bankruptcy court, and has now been briefed by the parties on appeal.

Additionally, the purpose of stating issues in the Rule 8009 document is to give the appellee an opportunity to designate items to include in the record on appeal in addition to the appellant's designated items (which is why, if the appellee cross-appeals and identifies cross-appeal issues, the appellant/cross-appellee may designate items in addition to the appellee's designated items). *See* Fed. R. Bankr. P. 8006(a)(1)-(3); *In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 104 F.3d 1147, 1148 (9th Cir. 1997) (noting that leading treatises "suggest that Rule 8006 exists to ensure the adequacy of the record"). Here, however, the Unions have not

14

identified anything that they would have designated in the record on appeal (had they known of the issue) but did not, nor do they suggest that the absence of anything in the record on appeal hampers their arguments on this issue. Given the lack of bad faith or prejudice, the Court can and should address the issue, especially given its purely legal nature. *See, e.g., Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (exercising discretion to address "a pure question of law" on appeal).

The Unions provide no support to the contrary, citing only *In re Columbia Gas Sys. Inc.*, 146 B.R. 106 (D. Del. 1992), in which the party had not cross-appealed and the court noted that the relevant evidence had not been cross-designated. *Id.* at 110 n.2. Those facts are not present here. Further, the handful of decisions cited by *Columbia Gas*—like that decision, all over three decades old—ultimately trace back to *In re Pine Mountain, Ltd.*, 80 B.R. 171, 173 (B.A.P. 9th Cir. 1987), in which the court provided no reasoning at all for this rule.

Most significant of all, the Ninth Circuit later held, contrary to *Pine Mountain*, that Rule 8006 "does not affect the ability of any party to appeal findings or conclusions of the bankruptcy court." *In re Bishop*, 104 F.3d at 1148. Citing leading treatises, the Ninth Circuit held that "Bankruptcy Rule 8006 does not limit a party's ability to appeal from a bankruptcy court's judgment," and it rejected the argument that a party has forfeited "any arguments that it did not specifically list in its statement of issues." *Id.*; *see also* 9 *Collier on Bankruptcy* 8006-10 (1996) ("[A]n

15

appellant should not be precluded from urging contentions in the brief merely because they were not contained in the statement of issues, if, in fact, the appellee suffers no prejudice thereby."); *Norton Bankruptcy Rules Pamphlet* 594 (1996-97 ed.) ("The requirement of a statement of the issues is not intended to bind either party to the appeal as to the issues that are to be presented to the appellate court."). Because no binding precedent holds otherwise, this Court should adopt the reasoning of *In re Bishop* and hold that Yellow's failure to explicitly identify this issue in its Rule 8006 statement of issues, which has resulted in no prejudice to the Unions, does not constitute forfeiture.

**B.** Under the New Jersey WARN Act, an "employer" is defined as a "business entity." N.J. Stat. Ann. §34:21-1. The Unions argue that the crucial word in the statute is "entity" and, as such, the corporate form of a company is determinative in evaluating its WARN obligations under the New Jersey Act. Br.50-51. This interpretation cannot be reconciled with the Third Circuit's *United Healthcare* decision, in which that court first held a company "preparing itself for liquidation" is not an "employer." 200 F. 3d 179. *United Healthcare*'s analysis turned on the term "*business* enterprise," not solely on the word "enterprise." *Id.* at 177 ("The question for us to resolve is whether United Healthcare . . . was operating as an ongoing business enterprise, or whether it was merely engaged in the liquidation of assets."). Indeed, *United Healthcare* used the terms "enterprise" and "entity"

16

interchangeably in its analysis, noting that "the more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an 'employer,'" in determining whether a company was a "business enterprise" under WARN. *Id.* at 178. And as the Unions nowhere dispute, *United Healthcare* quoted Department of Labor commentary that distinguished between "business" and "enterprise," underscoring that an entity can engage in "business" without being an "enterprise." Yellow.Br.62.

The critical question raised under the New Jersey WARN analysis is thus whether the company was engaged in its ordinary course *business*. The Unions' cited cases have no bearing on WARN claims and do not support the Unions' reading of the statute. *All the Way Towing, LLC v. Bucks Cnty. Int'l Inc.*, 200 A.3d 398 (N.J. 2019), considered the definition of "person" under the New Jersey Consumer Fraud Act. *Id.* at 405. *Bestest Int'l Inc. v. Futrex Inc.*, 2000 WL 36739130 (C.D. Cal. Aug. 14, 2000), considered the enforceability of a forum-selection clause in a franchise contract, and in weighing the "convenience of the parties," noted that two of the parties were "inactive business entities that do no[t] have offices of employees anywhere." *Id.* at *5. And the court in *Bagdan v. Beck*, 140 F.R.D. 660 (D.N.J. 1991), considered whether a party's counsel held a conflict of interest in representing parties on non-WARN claims. *Id.* at 681. Ultimately, the Unions cite no case law supporting their interpretation of the statute.

17

Contrary to the Unions' assertion, moreover, the omission of the word "ordered" from the New Jersey statute does not change that finding. Br.50. While the word "ordered" does not appear in the statute, the New Jersey Act requires that notice be given before a "termination of employment," defined as "the layoff of an employee without a commitment to reinstate the employee to his previous employment within six months of the layoff[.]" N.J. Ann. §34:21-1. Here, at the time notice was given and at the time of the layoffs—both of which occurred on July 30, 2023—Yellow was no longer engaged in its ordinary business operations, as it had already delivered its final shipment. A0609-610, A0616-617. Accordingly, Yellow was not a "business entity" at the time of layoffs, and the bankruptcy court's decision holding Yellow was an employer under the New Jersey WARN Act must be reversed.

## CONCLUSION

If the Court holds that Yellow was an "employer" under the federal WARN Act when it ordered the Union employees laid off on July 30, 2023, and that Yellow cannot avail itself of the faltering company and unforeseen business circumstances defenses but satisfied the WARN Act's good-faith provision, it should reduce Yellow's liability to zero rather than 14 days' worth. Additionally, the Court should reverse the judgment that Yellow was an "employer" under the New Jersey WARN Act.

Dated:  August 11, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*
Laura Davis Jones (No. 2436)
Timothy P. Cairns (No. 4228)
Peter J. Keane (No. 5503)
Edward Corma (No. 6718)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400l
Email:      jones@pszjlaw.com
            tcairns@pszjlaw.com
            pkeane@pszjlaw.com
            ecorma@pszjlaw.com

George W. Hicks, Jr. (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-2500
Email:      george.hicks@kirkland.com

Patrick J. Nash, P.C. (*admitted pro hac vice*)
Allyson B. Smith (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:      patrick.nash@kirkland.com
            allyson.smith@kirkland.com

19

Michael P. Esser (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
555 California, Suite 27
San Francisco, CA  94104
Telephone:  (202) 389-5000
Facsimile:   (415) 439-1500
Email:        michael.esser@kirkland.com

*Counsel for Appellees/Cross-Appellants*
*Yellow Corporation and Affiliates*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8016(d)(2)(A), the undersigned certifies that this Reply Brief For Appellees/Cross-Appellants (1) complies with the type-volume limitation of Fed. R. Bankr. P. 8016(d)(2)(B)(i) because, excluding the parts of the document exempted by the federal rules, the brief contains 4,632 words; and (2) complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: August 11, 2025                   */s/ Laura Davis Jones*
                                        Laura Davis Jones

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August, 2025, I electronically

filed the foregoing brief via CM/ECF, which will send notice of the filing to all

counsel of record.

Date: August 11, 2025                   */s/ Laura Davis Jones*
                                        Laura Davis Jones