# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: YELLOW CORPORATION, *et al.,* | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 23-11069-CTG |
| | : | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, *et al.,* | : | |
| | : | |
| Appellants and Cross-Appellees, | : | Civ. No. 25-307-JLH |
| v. | : | Civ. No. 25-377-JLH |
| | : | |
| YELLOW CORPORATION, *et al.,* | : | |
| | : | |
| Appellees and Cross-Appellants. | : | |

Susan E. Kaufman, LAW OFFICE OF SUSAN E. KAUFMAN, LLC, Wilmington, DE; Yintao Ho, Emma Wood, THE PREVIANT LAW FIRM, S.C., Milwaukee, WI,

> *Counsel to appellants and cross-appellees, International Brotherhood of Teamsters, Teamsters National Freight Industry Negotiating Committee, and International Association of Machinists.*

Laura Davis Jones, Timothy P. Cairns, Peter J. Keane, Edward Corma, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE; George W. Hicks, Jr., KIRKLAND & ELLIS LLP, Washington, DC; Patrick J. Nash, P.C., Allyson B. Smith, KIRKLAND & ELLIS LLP, Chicago, IL; Michael P. Esser, KIRKLAND & ELLIS LLP, San Francisco, CA,

> *Counsel to appellees and cross-appellants, Yellow Corporation and affiliates.*

## **OPINION**

June 29, 2026

HALL, U.S. DISTRICT JUDGE

## I.    INTRODUCTION

Under the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), an "employer shall not order a plant closing or mass layoff until the end of a 60-day period after" the employer gives notice to employees. 29 U.S.C. § 2102(a). But the requirement for at least 60-days' notice has certain statutory exceptions. 29 U.S.C. § 2102(b). If the employer wants to rely on one of the exceptions, it still must "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). This appeal concerns the applicability of certain exceptions.

On July 30, 2023, Yellow Corporation (together with certain affiliates, "Yellow" or the "Debtors") ordered the layoffs of its union employees without giving 60-days' notice. On August 6, 2023, Yellow filed for bankruptcy protection under chapter 11. Thereafter, the International Brotherhood of Teamsters ("IBT" or "Teamsters"), Teamsters National Freight Industry Negotiating Committee ("TNFINC"), and the International Association of Machinists and Aerospace Workers ("Machinists") (collectively, the "Unions") asserted claims under the WARN Act on behalf of former Yellow employees who are the Unions' members.

Yellow objected to the Unions' WARN Act claims. Prior to trial, the parties filed cross-motions for summary judgment, asking the Bankruptcy Court to adjudicate the sufficiency of various defenses that the Debtors asserted against the WARN Act claims. On December 19, 2024, the Bankruptcy Court issued an opinion (A0453),[1] *In re Yellow Corp.*, No. 23-11069, 2024 WL 5181660

---

[1] The appendix (D.I. 30) filed in support of the Unions' opening brief is cited herein as "A__," the supplemental appendix (D.I. 38–41) filed in support of Yellow's opening brief on cross-appeal and answering brief on appeal is cited herein as "SA__," and the combined appendix (D.I. 52) filed in support of the Unions' reply brief and answering brief on cross-appeal is cited herein as "RA__."

1

(Bankr. D. Del. Dec. 19, 2024) (the "SJ Opinion"). The SJ Opinion determined, among other things, that while Yellow substantively qualified for both the "faltering company" and "unforeseeable business circumstances" statutory exceptions, 29 U.S.C. § 2102(b)(1),(2)(A), it could not avail itself of either because the notice it gave at the time of the layoffs was insufficient. *In re Yellow Corp.*, 2024 WL 5181660, at *14–18. Specifically, the SJ Opinion concluded that the brief statement of the basis for reducing the notification period "did not contain enough facts adequately to justify the reduced notice." *Id.*, at *14. The Bankruptcy Court also granted the Unions partial summary judgment with respect to their contention that Yellow was an "employer" subject to the New Jersey WARN Act. *Id.*, at *26–27. On January 13, 2025, the Bankruptcy Court issued its accompanying order. ((Bankr. D.I. 5390 (the "SJ Order").)

Following a three-day trial held in January 2025, the Bankruptcy Court issued a thorough opinion, *In re Yellow Corp.*, 668 B.R. 337 (Bankr. D. Del. 2025) (A0595) (the "Opinion"), disallowing the Union's federal WARN Act claims on the ground that Yellow was not an "employer" on July 30 within the meaning of the WARN Act because it was operating as a "liquidating fiduciary." *See id.* at 348–54. The Bankruptcy Court held, in the alternative, that if there was a basis for imposing WARN Act liability against Yellow, it is entitled to a reduction of liability to 14 days of back pay and benefits per employee pursuant to 29 U.S.C. § 2104(a)(4), which permits courts to reduce the amount of liability under the WARN Act for good faith violations. *See id.* at 354–56. On March 12, 2025, the Bankruptcy Court issued its accompanying order. (Bankr. D.I. 5867 (A0631) (the "Order").)

The Unions appealed the final Order disallowing their federal WARN Act claims. The Unions argue that Yellow violated the WARN Act by not giving 60-days' notice prior to the layoffs. Yellow responds that the Bankruptcy Court correctly concluded that Yellow was no longer an "employer" within the meaning of the statute at the time of the layoffs. As alternative bases for affirmance, Yellow argues that the Bankruptcy Court correctly determined that Yellow had substantively satisfied

2

the "faltering company" and "unforeseeable business circumstances" exceptions and that the Bankruptcy Court erred in concluding that its WARN Act notice was insufficient to invoke those exceptions.

As to the Bankruptcy Court's alternative holding that any liability is reduced to 14 days of back pay, the Unions argue that any reduction of liability is an error. Yellow argues (in a cross-appeal) that any liability should be zero.

Finally, Yellow cross-appeals to challenge the Bankruptcy Court's conclusion that Yellow was an "employer" within the meaning of New Jersey's WARN Act at the time of the layoffs.

For the reasons set forth below, the Court agrees with the Bankruptcy Court that the "faltering company" exception to the federal WARN Act applies. 29 U.S.C. § 2102(b)(1). The Court also agrees with Yellow that the WARN Act notice it ultimately issued contained the requisite "brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). Finally, the Court agrees with the Bankruptcy Court that Yellow was an "employer" under the New Jersey WARN Act at the time of the layoffs. Accordingly, the Order will be affirmed.

## II.    BACKGROUND

### A.    Facts Relevant to the Consolidated Appeal

Although the facts that are material to resolving this appeal are not disputed, the Bankruptcy Court made a number of findings that are helpful to frame the issues on appeal and provide context.

Yellow was the largest unionized less-than-truckload carrier in North America. On an average day, Yellow handled some 50,000 shipments. Approximately two-thirds of Yellow's employee base was unionized. As Yellow grew, it acquired various entities across North America. To eliminate redundancies from overlapping operations, Yellow developed the One Yellow initiative. Yellow planned to implement One Yellow in three phases, each of which required negotiations with the

Unions.  Yellow and the Unions successfully negotiated implementation of "Phase One" in October 2022.  *In re Yellow Corp.,* 2024 WL 5181660, at \*5.

During 2023, as Yellow sought to negotiate with the Unions to implement Phase Two of One Yellow, it was having liquidity issues.  In early 2023, Yellow hired Ducera Investment Partners ("Ducera") to develop strategic financing alternatives for the company, all of which hinged on Yellow reaching a deal with the Unions for implementation of Phase Two, as no lender would provide capital unless a new plan was in place to integrate the company's businesses and reduce costs.  As negotiations over Phase Two dragged on into summer 2023, the company's cash position continued to weaken.  *See id.* at \*6.  During this time, Yellow's CEO, Darren Hawkins, sent several emails to Yellow's employees.  These communications provided updates to employees on negotiations with the IBT, steps the company was taking to preserve capital, and the potential consequences of the failure to reach a deal with the IBT.  *See id*.

Among Yellow's most substantial monthly expenses was the $50 million it paid in healthcare and pension benefits to various pension funds.  In June 2023, due to worsening liquidity issues, Yellow requested to defer certain pension and healthcare contribution payments to Central States Pension Fund.  *See id.*  In previous years, Yellow had sought and received similar payment deferrals to free up liquidity, all without employees losing benefits because Yellow paid the deferral amount and retroactively reinstated benefits.  *See id.*  Yellow provided the Unions with documents reflecting its precarious financial position.  The IBT's General President denied Yellow's request.

On July 7, 2023, given the dire liquidity issues, Yellow elected not to make its contribution payments to Central States, hoping that by deferring the payments, it could buy more time to reach a deal with the IBT.  *See id.*.  On Monday, July 17, 2023, Central States informed the IBT that Yellow had deferred its monthly contributions.  *See id.*  Later that same day, the IBT responded by issuing a strike notice with a strike date of the following Sunday, July 23, at midnight.  *See id.*  The strike notice

4

was quickly publicized, triggering a "precipitous decline" in Yellow's business. *In re Yellow Corp.,* 668 B.R. at 344. Within 24 hours, Yellow's core customers moved their shipments to other carriers. *See id.* Within days, Yellow's shipments evaporated, and the exodus of customers created a domino effect in a way that had never happened before. Hawkins described the confluence of customers' concerns about Yellow's ability to complete shipments with the existence of excess capacity in the market as a "perfect storm." *See id.* The economic conditions allowed Yellow's core customers to divert the majority of their freight to other trucking lines within a matter of days, significantly faster than Yellow's management had thought possible. *Id*. at 344–45.

The strike notice also required Yellow to make strike preparations, including returning all equipment to its terminals; however, because its trucks operated 24 hours every day, Yellow lacked sufficient space to "house all of its equipment at once." *See id*. at 345. Accordingly, to prepare for a strike set for July 23 at midnight, Yellow "had to cease normal operations" by the end of Saturday, July 22. *See id.* The Teamsters called off the strike late on Sunday, July 23, only hours before the start time. *See id.* Unfortunately, by Monday, July 24, the damage was irreparable. *See id.* Yellow could not accept new shipments because its equipment was in "gridlock" on "terminal lots," plus it needed to move already-existing freight stuck in its system while customers insisted on priority delivery. *See id.* Customers quickly diverted freight to competitors. *See id.*

On July 26, Yellow's board met and decided that there was no viable path forward and the company would liquidate. *See id*. That same day, Yellow's advisors began working to prepare for a bankruptcy filing. *See id.* Yellow planned to shut down and lay off union employees on Sunday, July 30, because that was the day the fewest employees would be on Yellow's properties. *See id.* Yellow implemented a plan that distinguished critical shipments from other shipments, so that it delivered critical shipments through July 29; and coordinated and planned to move other shipments as far as possible between July 26 and July 29. Yellow understood that once shipments moved as far

5

as possible on July 29, the shipments would stop, because Yellow wanted to have everyone out of its terminals by noon on July 30, 2023. *See id.* The record reflects that from July 26 to July 30, Yellow's human resources and legal teams worked around the clock planning for the shutdown.

On July 30, at 12:00 p.m. Eastern, Yellow ordered the 22,000 union employees laid off. That same afternoon, WARN notices were transmitted to every affected local union; individualized notices were mailed to every affected union employee the next morning. The WARN notices stated, in relevant part:

> The Company was not able to provide earlier notice of the Shut Down as it qualifies under the "unforeseeable business circumstances," "faltering company," and "liquidating fiduciary" exceptions set forth in the WARN Act. The Company expects all layoffs and location closures relating to the Shut Down to be permanent. The Company had hoped to complete one or more transactions and secure funds and business to prevent the closing of these locations but was unable to do so. These circumstances were not reasonably foreseeable at the time notice would have otherwise been required and notice is further excused because the business is being liquidated.

(SA0224) (emphasis added).

### B.    Procedural Background

#### 1.    The Summary Judgment Opinion

On August 6, 2023, Yellow commenced the chapter 11 proceedings. The Unions filed proofs of claim and adversary complaints alleging that Yellow violated the WARN Act and certain state analogues by not issuing WARN Act notices to employees 60 days before the July 30 layoffs. (A0597.) Following discovery, the parties filed cross motions for summary judgment asking the Bankruptcy Court to adjudicate the sufficiency of various defenses that Debtors asserted against Yellow's liability under the WARN Act. On December 19, 2024, the Bankruptcy Court issued its decisions on the parties' cross-motions for Summary Judgment.

The Bankruptcy Court held that Yellow substantively satisfied the "faltering company" and "unforeseeable business circumstances" exceptions to the WARN Act. *See In re Yellow Corp.*, 2024 WL 5181660, at *9–13; 29 U.S.C. § 2102(b)(1),(2)(A). But the Bankruptcy Court held that Yellow could not avail itself of those exceptions because its WARN notices to union employees "did not contain enough facts adequately to justify the reduced notice"; thus, it granted summary judgment to the Unions with respect to both exceptions. *In re Yellow Corp.*, 2024 WL 5181660, at *14–18; 29 U.S.C. § 2102(b)(3).

The Bankruptcy Court also granted partial summary judgment to the Unions regarding Yellow's liability under the New Jersey WARN Act because, in its view, the New Jersey Act does not include "faltering company" or "unforeseeable business circumstances" exceptions, and Yellow was an "employer" subject to that law. *See id.* at *26–27.

The Bankruptcy Court held that factual disputes prevented summary resolution of two issues: (1) whether, when the union employees were ordered laid off on July 30, 2023, Yellow was an "employer" subject to the federal WARN Act; and (2) if Yellow was liable under the WARN Act, whether its conduct warranted a reduction in liability based on the Act's good-faith provision. *See id.* at *25–26.[2]

### 2.    The Opinion

The Bankruptcy Court held a three-day trial in January 2025. (*See* Bankr. D.I. 5536, 5537, 5538.) On February 26, 2025, the Bankruptcy Court issued its Opinion. The Bankruptcy Court determined that Yellow was no longer an "employer" subject to the WARN Act at the time it ordered the layoffs of its union employees on July 30, 2023, because it had completed its last delivery to a customer at 11:30 p.m. on July 29, 2023, and was thereafter no longer operating as a "business

---

[2] The Bankruptcy Court also addressed other issues not relevant to this appeal.

enterprise" but rather as a "liquidating fiduciary." *See In re Yellow Corp.*, 668 B.R. at 348–54 (quoting 29 U.S.C. § 2101(a)(1)).

The Bankruptcy Court concluded, in the alternative, that to the extent Yellow has liability under the WARN Act, damages should be limited to 14 days of pay and benefits per employee, rather than the 60 days of pay and benefits to which they would otherwise be entitled, based on "Yellow's good faith efforts to comply with the statute." *See id.* at 355 (citing 29 U.S.C, § 2104(a)(4)).

### 3. The Appeal and Cross-Appeal

On March 12, 2025, the Unions filed a timely notice of appeal with respect to the Order. (Civ. No. 25-307-JLH, D.I. 1.) Yellow timely filed its notice of cross-appeal on March 26, 2025, within 14 days after the Unions filed their notice of appeal. (Civ. No. 25-377-JLH, D.I. 1.) *See* 28 U.S.C. §158(a)(1); Fed. R. Bank. P. 8002(a)(3). On April 23, 2025, the Court entered the parties' agreed-upon order procedurally consolidating the appeal and cross-appeal under Civ. No. 25-307-JLH. (D.I. 25.)[3] The consolidated appeal is fully briefed. (D.I. 27, 37, 51, 53, 54, 56.) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

### III. JURISDICTION

While the parties agree that the post-trial Order was the Bankruptcy Court's "final order on the WARN Act dispute" (*see* D.I. 27 at 1; D.I. 37 at 3), federal courts are under an independent obligation to examine their own jurisdiction. An appeal of right lies from "final judgments, orders, and decrees" entered by bankruptcy courts "in cases and proceedings." 28 U.S.C. § 158(a). By providing for appeals from final decisions in bankruptcy "proceedings," as distinguished

---

[3] Unless otherwise indicated, the Court cites the docket of the consolidated appeal, Civ. No. 25-307-JLH.

from bankruptcy "cases," Congress made "orders in bankruptcy cases . . . immediately appeal[able] if they finally dispose of discrete disputes within the larger [bankruptcy] case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quoting *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657, n.3 (2006)). "Correct delineation of the dimensions of a bankruptcy 'proceeding' is a matter of considerable importance." *Ritzen Grp., Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC),* 589 U.S. 35 (2020). Here, the relevant proceedings are the Debtors' omnibus objections to plaintiffs' claims[4] and plaintiffs' adversary proceedings.[5] All proceedings required the Bankruptcy Court to determine whether Yellow was subject to liability under the WARN Act and certain state analogues, and, if so, whether Yellow could avail itself of certain defenses or exceptions to liability.[6]

The SJ Order and Order finally dispose of those discrete disputes. The SJ Order, issued "[p]ursuant to Federal Rule of Civil Procedure 56(g), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056," granted in part and denied in part the competing motions for summary

---

[4] Various parties filed proofs of claims against the Debtors under the WARN Act. Because the WARN Act authorizes unions to assert claims on behalf of their members, the Teamsters filed approximately 20,000 proofs of claim on behalf of former employees who belonged to the union. *See* 29 U.S.C. § 2104(a)(4). The Debtors filed objections to all proofs of claim asserting liability under the WARN Act. (*See* Bankr. D.I. 2576, 2577, 2578.)

[5] Two other groups of former employees (the *Moore* and the *Coughlen* plaintiffs) asserted claims through adversary proceedings. *See Moore, et al. v. Yellow Corp., et al.*, Bankr. D. Del. No. 23-50457 (the "*Moore* Adversary"); *Coughlen, et al. v. Yellow Corp., et al.,* Bankr. D. Del. No. 23-50761 (the "*Coughlen* Adversary"). The *Moore* plaintiffs were a class of more than 4,000 non-union employees. The *Coughlen* plaintiffs were individual former employees, some of who belonged to the union (but elected not to be represented by the union for the purpose of asserting their claims) and others of whom were not union members (but were not members of the *Moore* class).

[6] To promote the efficient and expeditious disposition of all WARN claims and proceedings, the Bankruptcy Court issued a scheduling order providing that the claims objections and adversary proceedings proceed in parallel, and the parties agreed to present issues common to all of the WARN Act claims in summary judgment motions that would all be heard together. (*See* Bankr. D.I. 2999 (Apr. 11, 2024 Hr'g Tr., at 23); Bankr D.I. 3186.)

9

judgment as to Yellow's defenses "for the reasons set forth in the [SJ] Opinion," which concluded

that Yellow was "an employer under [the New Jersey WARN Act]" on July 30, 2023, regardless of

whether it had completed its last delivery before terminating union employees on July 30, 2023, *see*

*In re Yellow Corp.*, 2024 WL 5181660, at \*26, but left for trial the issue of whether Yellow was an

employer on July 30, 2023 under the federal WARN Act, *see id*. at \*20.  (*See* SJ Order at ¶ 5(c)

(granting summary judgment in favor of the Unions as to the unavailability of the faltering company

and unforeseeable business circumstances defenses) and ¶ 5(l) (granting summary judgment in favor

of the Unions seeking liability under the New Jersey WARN Act which contains neither of those

defenses).)  In any event, the SJ Order was rendered final by the post-trial Order which determined

all remaining issues as to Yellow's liability under the WARN Act.  (*See* Order at ¶ 1 (granting

summary judgment to Yellow as to applicability of liquidating fiduciary exception and holding that

"the union members' WARN Act claims as referenced in the Debtors *Third, Fourth, and Fifth*

*Omnibus (Substantive) Objections to Proofs of Claim for WARN Liability* ([Bankr.] D.I. 2576, 2577,

2578, respectfully) are disallowed, and Yellow is not liable to the union members under the WARN

Act.").)  *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) ("An order allowing or disallowing

a claim is a final, appealable order.") (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir.

BAP 2006)).

## IV.    ANALYSIS

I agree with the Bankruptcy Court that Yellow meets the "faltering company" exception to

the federal WARN Act, and I also agree with Yellow that the WARN Act notice it issued was

sufficient to invoke that exception.  Accordingly, the Order disallowing the federal WARN Act claims

will be affirmed on alternative grounds.[7]  I also agree with the Bankruptcy Court's determination in

---

[7] Accordingly, the Court need not and does not consider the parties' arguments regarding the
other issues presented in the appeal, including the applicability of the so-called "liquidating fiduciary"

the SJ Opinion and Order that Yellow was an employer subject to liability under the New Jersey WARN Act.

### A.    Yellow May Rely on the "Faltering Company" Exception

#### 1.  Yellow did not "waive" its argument about the faltering company exception.

As an initial matter, the Unions argue that Yellow "waived its right to challenge" the Bankruptcy Court's rejection of the faltering company exception because Yellow did not raise that exception as part of its cross-appeal.  But a cross-appeal is necessary only when the appellee "attack[s] the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015).  I agree with Yellow that its argument to apply the faltering company exception does not seek to "enlarg[e]" its rights or "lessen[]" the Unions', because prevailing on that argument would result in a decree no different than the current decree of no liability.  *Id.*; *cf. Bradley v. West Chester Univ.*, 880 F.3d 643, 650 (3d Cir. 2018) (explaining that appellate courts "may affirm on any ground supported by the record").  Yellow may argue that the faltering company exception applies.

---

exception.  In concluding that the liquidating fiduciary exception applied here, the Bankruptcy Court relied on the Third Circuit's opinion *In re United Healthcare System, Inc.*, 200 F.3d 170 (3d Cir. 1999), which considered whether a chapter 11 debtor-in-possession was still an "employer" at the time it furloughed employees during the pendency of the bankruptcy proceedings.  *Id.* at 178–79 (concluding that a debtor who had assumed the role of fiduciary following its bankruptcy filing was no longer an "employer" where its remaining activities were all in preparation for liquidation).  The Bankruptcy Court in this case concluded that Yellow was no longer an "employer" once it made its last delivery and was therefore entitled to the liquidating fiduciary exception to the WARN Act recognized in cases like *In re United Healthcare*.  *See In re Yellow Corp.*, 668 B.R. at 348–54.

  This Court is skeptical of the proposition that a company can rely on the liquidating fiduciary exception when it lays off its employees before entering bankruptcy proceedings.  *Cf. In re World Marketing Chicago, LLC*, 564 B.R. 587, 599 (Bankr. N.D. Ill. 2017) ("The liquidating fiduciary exception . . . applies 'in the bankruptcy process.'") (quoting 54 Fed. Reg. 16,045 (1989)).  But the Court need not address the question in light of its determination that Yellow may rely on the "faltering company" exception.

## 2. Yellow was a "faltering company."

The faltering company exception excuses the WARN Act's 60-day notice requirement if, at the time notice would have been required, the employer was "actively seeking capital or business" that would have "enabled the employer to avoid or postpone the shutdown," and the employer "reasonably and in good faith believed" that providing the required WARN notice "would have precluded the employer from obtaining the needed capital or business." 29 U.S.C. § 2102(b)(1); *see also* 20 C.F.R. § 639.9 (providing that "[a]n employer must have been actively seeking capital or business at the time that 60–day notice would have been required" and "there must have been a realistic opportunity to obtain the financing or business sought").

I agree with the Bankruptcy Court that Yellow was a faltering company at the time notice was required. Because Yellow laid off Union employees on July 30, 2023, Yellow was required to have been seeking capital as of May 31, 2023. *See In re Yellow Corp.*, 2024 WL 5181660, at *10. At that time, Yellow was working with its investment banker, Ducera, both to refinance existing debt and to attract new capital, and such efforts, if successful, would have been sufficient to avoid or postpone shutdown. (*See, e.g.*, A0934 at 14:22–24; A0941 at 42:24–43:9; *see also* A0950 at 78:11–20 (referencing Ducera's "frequent" conversations with outside private equity fund through July 24).) *See In re Yellow Corp.*, 2024 WL 5181660, at *10 ("[T]he evidence is undisputed that Ducera was actively engaged in efforts to identify potential sources of new capital until the precipitous decline in the debtors' business occasioned by the Teamsters' strike notice rendered those efforts futile."). Yellow was actively seeking capital at the required time, thereby qualifying for the exception, even if those efforts "were ultimately unsuccessful." *Id.* at *11.

The Unions assert that this exception is unavailable because of "a gap in time" between the end of Yellow's "realistic opportunity" to obtain financing and when it began to draft the WARN notice for the union employees. (*See* D.I. 27 at 3, 35; D.I. 51 at 5.) To the extent I understand the

12

argument—which is not clearly presented—the Unions say the exception doesn't apply because, by July 23, 2023, it was a "near impossibility" that Yellow could obtain additional financing, but Yellow didn't start to prepare its WARN notices until July 28, 2023. (*Id.*) Yellow asserts that this argument is forfeited. (D.I. 37 at 35.) I agree. The Unions never made the argument to the Bankruptcy Court in reference to whether the statutory requirements in 29 U.S.C. § 2102(b)(1) were met. Rather, the Unions argued to the Bankruptcy Court that the faltering company exception didn't apply because Yellow was not "actively seeking capital" on May 31 and did not "reasonably and in good faith believe" that issuing a WARN notice would preclude obtaining that capital. *In re Yellow Corp.,* 2024 WL 5181660, at *10–11. (*See* SA0023–28 (Unions' brief in support of summary judgment); SA0054–61 (Unions' opposition to Yellow's summary judgment motion); SA0083–90 (Unions' reply in support of summary judgment.) As Yellow correctly points out, the Unions identify no authority establishing a "near impossibility" inquiry as relevant to the faltering company exception. Indeed, the Unions' lead case, *AE Liquidation*, did not concern the faltering company exception. (*See* D.I. 27 at 36 (citing *In re AE Liquidation*, 866 F.3d 515, 530 (3d Cir. 2017).) The Court also agrees that it cannot be the case that the "near impossibility" of obtaining financing just before shutdown forecloses the faltering company exception, because every company that shuts down presumably did so because of its ultimate inability to obtain additional financing just before making the decision to shut down.[8]

---

[8] Section 2102(b)(3) does require that an employer relying on the faltering company exception "give as much notice as is practicable." 29 U.S.C. § 2102(b); *see also* 20 C.F.R. § 639.9. But the Unions don't suggest to this Court that the faltering company exception does not apply at all because Yellow could have "practicably" given earlier notice, only that Yellow should not have the benefit of the good faith doctrine reduction in liability where, in the Unions' view, Yellow should have issued the notice a few days earlier. (*See* D.I. 27 at 35-36.)

13

**3. Yellow's notice to the union employees contained the requisite "brief statement of the basis for reducing the notice period."**

The WARN Act provides that "[a]n employer relying on [one of the statutory exceptions] shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."  29 U.S.C. § 2102(b)(3); *see also* 20 C.F.R. § 639.9.  As detailed above, the notice sent to union employees stated, among other things, that "[t]he Company was not able to provide earlier notice of the Shut Down as it qualifies under the 'unforeseeable business circumstances,' 'faltering company,' and 'liquidating fiduciary' exceptions set forth in the WARN Act" and that "[t]he Company had hoped to complete one or more transactions and secure funds and business to prevent the closing of these locations but was unable to do so."  (SA0224.)

The Third Circuit has not delineated the minimum contents of the required "brief statement." That said, both the Third and Ninth Circuits have suggested that a statement is compliant where it sufficiently "assist[s]" the employees in "understand[ing] the employer's situation and its reasons for shortening the notice period."  *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994) (addressing faltering company and unforeseeable business circumstances exceptions); *In re AE Liquidation, Inc.*, 866 F.3d 515, 525 (3d Cir. 2017) (addressing unforeseeable business circumstances exception).  In *Alarcon*, the Ninth Circuit found a notice to be sufficient for the faltering company exception where the notice (i) cited the subsection of the WARN Act containing the faltering company exception and (ii) explained that the business's performance "has been disappointing and the substandard working capital required of business does not make it a viable entity," that the employer "pursued several options for possible purchase, but was unable to secure a qualified buyer," and that the employer "was unable to find parties interested in supplying the enormous working capital for such a high risk and under performing business."  *Alarcon*, 27 F.3d at 388.

Here, the Bankruptcy Court stated that "[t]his is certainly a close case," but it held that Yellow's notice was deficient because it failed to contain "language specific to the company's circumstances." *In re Yellow Corp.*, 2024 WL 5181660, at *16. I agree with the Bankruptcy Court that the question is close. But I agree with Yellow that its notice complied with the statute. The notice makes clear which statutory exception is being relied upon—the "faltering company" exception—and it explains that Yellow had hoped to complete one or more transactions and secure funds and business to prevent the closing of its locations but was unable to do so.

True, the notice held to be sufficient in *Alarcon* had more words, but Yellow's notice conveys the same substance. An employee reading the notice would understand, at a minimum, that he or she was receiving the notice on a shortened period because the company's efforts to obtain financing and business necessary to survive failed. At least in the context of the faltering company exception,[9] Yellow's brief statement is sufficient to "give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable." *Alarcon*, 27 F.3d at 390.

The Unions contend that a "legally compliant notice" would have informed the employees not only that the company had actively sought funds or business, but that employees "did not receive

---

[9] The Court is aware of caselaw saying that a company relying on the "unforeseeable business circumstances" exception must say something more than repeat the statutory language of that exception, *i.e.*, that "the layoff [was] caused by business circumstances that were not reasonably foreseeable." 29 U.S.C. § 2102(b)(2)(A); *see, e.g., In re United Furniture Indus.*, 667 B.R. 441, 463 (Bankr. N.D. Miss. 2024) (notice inadequate to invoke unforeseeable business circumstances exception where it "merely indicated that it had attempted to obtain financing and that unforeseen circumstances existed, without providing any further elaboration or information such as an explanation of what [] unforeseen circumstances [the company] was experiencing"); *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (exception not applicable where "notice stated only that '[t]he Firm was not able to give greater advance notice of this termination since this termination arises from unforeseeable business circumstances'"). Those holdings make good sense: an employee arguably would need to be told something about the underlying facts that constitute the unforeseeable circumstances in order to understand the "situation and [the employer's] reasons for shortening the notice period." *In re AE Liquidation, Inc.*, 866 F.3d at 525.

Here, I need not decide whether Yellow's notice is sufficient for the unforeseeable business circumstances exception because it is sufficient for the faltering company exception.

15

earlier notice because their employer believed giving earlier notice would preclude it from obtaining the needed capital or business." (*Id*. at 48–49.) The Unions cite *Alarcon* in support of this contention. (*See id.*) However, the notice determined to be sufficient in *Alarcon* also did not include a statement that providing earlier notice would have precluded the employer from obtaining needed capital or business; rather, *Alarcon* concluded that workers would have understood as much based on the facts set forth in the notice—which explained that business performance had been disappointing, working capital was insufficient, and the employer could find neither a buyer nor a lender—together with the notice's express reference to the faltering company exception. *See Alarcon*, 27 F.3d at 390.

Because Yellow satisfies the faltering company exception and its WARN notice contained the requisite brief statement, the Court will affirm the Bankruptcy Court's disallowance of the Unions' federal WARN Act claims.

B.    **The Bankruptcy Court Correctly Concluded that Yellow Was an "Employer" Within the Meaning of the New Jersey WARN Act.**

Yellow argues on appeal that the Bankruptcy Court erred in granting summary judgment to the Unions with respect to Yellow's liability under the New Jersey WARN Act because, in Yellow's view, it is not an "employer" within the meaning of the statute.[10]

The New Jersey WARN Act expressly defines an "employer" as "an individual or private business entity which employs the workforce at an establishment." N.J. Stat. Ann. § 34:21-1.[11] Yellow's argument is essentially that it stopped being an "employer" when it made its last delivery at 11:30 p.m. on July 29, 2023, so it was no longer an "employer" on June 30 when it laid off its

---

[10] The Court rejects the Unions' argument that Yellow has "waived" this argument on appeal for the reasons set forth in Yellow's reply brief. (*See* D.I. 53 at 13–16.)

[11] An "establishment" is "a place of employment which has been operated by an employer for a period longer than three years," with certain exceptions, and "may be a single location or a group of locations." N.J. Stat. Ann. § 34:21-1.

22,000 union workers.

I disagree.  Under any reasonable interpretation of the statute, Yellow was a "private business entity which employed [a] workforce at an establishment" at the time it conducted the layoffs of the union workers.  N.J. Stat. Ann. § 34:21-1.  The Court affirms the Bankruptcy Court's determination in the SJ Opinion and SJ Order that Yellow was an employer within the meaning of New Jersey's WARN Act.

V.    **CONCLUSION**

For the reasons set forth above, the Bankruptcy Court's Order will be affirmed.  The Court will issue a separate Order consistent with this Opinion.